IN THE SUPREME COURT OF NORTH CAROLINA

No. 38A25

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

WILLIAM DAVID LINGERFELT

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided

panel of the Court of Appeals, 297 N.C. App. 168 (2024), affirming an order denying

defendant's petition for termination of sex offender registration entered on 22 May

2023 by Judge J. Thomas Davis, in Superior Court, McDowell County. Heard in the

Supreme Court on 11 September 2025 and reheard following supplemental briefing

on 17 February 2026.

*Jeff Jackson, Attorney General, by Reginaldo E. Williams Jr., Assistant Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Nicholas C. Woomer-Deters, Assistant Appellate Defender, for defendant-appellant.*

DIETZ, Justice.

In 2003, Defendant William David Lingerfelt pleaded guilty to two counts of

sexual activity by a substitute parent. As a result, Lingerfelt was required to register

as a sex offender.

Under state law, a person cannot petition to be removed from the sex offender

registry until they meet the requirements of the federal Sex Offender Registration

and Notification Act. Under SORNA, offenders convicted of "Tier I" offenses cannot petition for removal until 15 years after the date of registration. Those convicted of "Tier II" offenses must wait 25 years before seeking removal.

In 2019, Lingerfelt petitioned to be removed from the sex offender registry. The trial court denied the petition after determining that Lingerfelt was a Tier II offender, meaning he had to wait 25 years from his initial 2003 registration to seek removal. Lingerfelt did not appeal this ruling, although it was a final, appealable judgment.

In 2023, Lingerfelt again petitioned to be removed from the registry. The trial court again denied the petition because he was a Tier II offender and not yet eligible. This time, Lingerfelt appealed, arguing that he was a Tier I offender, not a Tier II offender, and thus was eligible for removal under SORNA.

The dispositive question for this Court is whether the failure to appeal the 2019 order bars Lingerfelt from contesting the legal ruling that he is a Tier II offender. As explained below, we hold that successive petitions to terminate sex offender registration are all parts of the same underlying case and subject to the doctrine of law of the case. Applying that doctrine here, Lingerfelt is procedurally barred from challenging his designation as a Tier II offender because he failed to appeal from the first judgment in this case addressing that legal question. As a result, the trial court properly denied his successive petition. We therefore modify and affirm the Court of Appeals' decision on this basis without addressing the remainder of the court's analysis.

## Facts and Procedural History

In 2003, Defendant William David Lingerfelt pleaded guilty to two counts of sexual activity by a substitute parent in violation of N.C.G.S. § 14-27.7(a). The trial court imposed a suspended sentence of 18 to 31 months in prison, along with 36 months of supervised probation. As part of his sentence, Lingerfelt was required to register as a sex offender, which he did in February 2003. In May 2004, the trial court found Lingerfelt violated the conditions of probation and activated his suspended sentence.

Lingerfelt later filed three petitions for termination of sex offender registration under N.C.G.S. § 14-208.12A. Lingerfelt filed the first petition in 2017, fourteen years after his 2003 conviction and resulting registration. At the hearing on this first petition, the trial court declined to make a legal ruling on Lingerfelt's sex offender tier level under the federal Sex Offender Registration and Notification Act because Lingerfelt's petition was premature regardless of tier level. *See* 34 U.S.C. § 20915.

In 2019, Lingerfelt filed a second petition for termination of sex offender registration. This time, the trial court ruled that Lingerfelt was a "Tier II" offender under SORNA, meaning he was ineligible for relief until 25 years after his initial registration. The trial court handwrote this legal conclusion on the preprinted form next to a box asking whether the petitioner complied with SORNA's minimum registration requirements. The trial court did not check the box indicating compliance and instead wrote "Tier 2 Offense. 25 Year Min." Lingerfelt did not appeal the trial

court's order although it was a final, appealable judgment.

In 2023, Lingerfelt filed a third petition. Once again, the trial court denied the petition as premature because Lingerfelt had not waited until 25 years after his initial conviction and resulting registration. This time, Lingerfelt appealed.

The Court of Appeals affirmed the trial court's order in a divided opinion. *State v. Lingerfelt*, 297 N.C. App. 168 (2024). The majority held that Lingerfelt was a Tier II offender under SORNA and therefore ineligible for removal until 25 years after his initial registration. *Id.* at 170–78. The dissent asserted that Lingerfelt was a Tier I offender and thus eligible for removal if the trial court deemed it appropriate. *Id.* at 178–82 (Murphy, J., dissenting). The dissent would have vacated the order and remanded so that the trial court could exercise its discretion in deciding whether to remove Lingerfelt from the registry. *Id.*

Lingerfelt appealed to this Court based on the dissent. After questions arose during oral argument concerning the preclusive effect of the trial court's 2019 order, this Court directed the parties to submit supplemental briefing regarding whether "the trial court properly denied defendant's petition because the court's previous determination that defendant was a Tier II offender was the law of the case or was otherwise binding on the court in a subsequent petition." *State v. Lingerfelt*, 388 N.C. 514 (2025) (order).

## Analysis

The core issues in this case are whether rulings on questions of law in

successive petitions to terminate registration are subject to issue preclusion and, if so, which doctrine of preclusion applies—collateral estoppel, which applies to a ruling in a different proceeding, or law of the case, which applies to a ruling in the same proceeding.

As explained below, we hold that, under the language of the applicable statute, petitions to terminate registration are all part of the same underlying proceeding and are therefore subject to the doctrine of law of the case.

## I. Background of North Carolina sex offender registration

North Carolina has a "registration requirement for persons convicted of certain offenses against minors or sexually violent offenses." N.C.G.S. § 14-208.6A (2025). This registration program is designed to assist federal, state, and local law enforcement agencies and to provide the public with "relevant information" about convicted sex offenders living in their communities. *Id.* § 14-208.5.

Ten years after the date of initial registration, an offender may request to be removed from the registry and its accompanying requirements. *Id.* § 14-208.12A. To do so, the offender must file a petition to terminate registration in superior court. *Id.* § 14-208.12A(a). The court may terminate registration if the offender (1) has not been arrested for a subsequent offense requiring registration, (2) has complied with "federal standards applicable to the termination of a registration requirement," and (3) has satisfied the court that the offender is no longer a "current or potential threat to public safety." *Id.* § 14-208.12A(a1).

The "federal standards" referenced in the statute are governed by the Sex Offender Registration and Notification Act. *See* 34 U.S.C. § 20915. Under SORNA, an offender must maintain their sex offender registration for a minimum duration determined by their "tier" level: 15 years minimum for a Tier I offender, 25 years minimum for a Tier II offender, and life for a Tier III offender. *Id.* § 20915(a)(1)–(3).

The procedure for filing a petition to terminate registration in North Carolina is detailed in N.C.G.S § 14-208.12A. The petition must be filed in superior court "in the district where the person was convicted of the offense" for state offenses and "in the district where the person resides" for out-of-state offenses. *Id.* § 14-208.12A(a). When a petition is filed, the clerk of superior court must "place the petition on the criminal docket to be calendared by the district attorney." *Id.*

## II.    Preclusive effect of petition to terminate registration

With this background in mind, we turn to the preclusive effect of a ruling on a petition to terminate registration. Importantly, the registration statute expressly anticipates successive petitions to terminate registration. *Id.* § 14-208.12A(a3). Following the denial of a petition, the offender "may again petition the court for relief . . . one year from the date of the denial of the original petition to terminate the registration requirement." *Id.*

This one-year refiling provision advances the statute's purpose because the ultimate decision to grant a petition to terminate registration turns on whether the trial court is "satisfied that the petitioner is not a current or potential threat to public

safety." *Id.* § 14-208.12A(a1)(3). If the offender is unable to persuade the court on this issue, the statute provides a one-year period in which the offender can make life changes that might address the court's concerns. *See id.* § 14-208.12A(a3).

It follows, then, that a trial court's ruling on whether an offender is a threat to public safety is not subject to issue preclusion. The General Assembly intended to give offenders the ability to return to court after at least one year has passed and, in effect, seek reconsideration of the trial court's earlier determination that the offender is a threat to public safety. Because this discretionary, fact-based determination is, by its nature, a matter over which reasonable jurists could reach different results, an earlier determination does not bar a court from reaching a different determination in the future, even on largely identical facts.

But the same is not true for the determination of an offender's tier level under SORNA. Unlike determining whether an offender is a threat to public safety, calculating an offender's tier level under SORNA is a legal question with only one objectively correct answer. *See State v. Moir*, 369 N.C. 370, 375–90 (2016). In the American legal system, we do not tolerate conflicting answers to pure legal questions. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). One of the principal reasons we have appellate courts is to prevent "divergent development" of legal issues by creating a system that can establish a single, precedential answer. *Id.* at 234.

Applying this principle here, the trial court's calculation of Lingerfelt's tier level under SORNA is subject to issue preclusion. It is not possible for a trial court to

*correctly* rule that Lingerfelt is a Tier II offender in one petition but a Tier I offender in a successive petition. This is a legal question, so one of these two rulings is a legal error. If Lingerfelt believed the trial court's first ruling was an error, he was required to appeal that ruling to avoid its preclusive effect in future petitions. He cannot accept the ruling, decline to appeal, and then insist that a future court can rule a different way on the same question of law. *See Calloway v. Ford Motor Co.*, 281 N.C. 496, 501 (1972).

### III.    Type of preclusion applicable to successive petitions

Having established that an offender's tier level under SORNA is a legal question subject to preclusion, we turn to the second question: What doctrine of preclusion applies to successive petitions to terminate registration? Lingerfelt argues that the appropriate doctrine is collateral estoppel. Collateral estoppel applies to issues raised and actually litigated in an earlier legal proceeding. *State v. Summers*, 351 N.C. 620, 623 (2000). The doctrine protects litigants "from the burden of relitigating previously decided matters" when those matters arise in another, separate legal proceeding. *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 427 (1986).

By contrast, when an issue is decided in the *same* legal proceeding, the applicable form of preclusion is known as law of the case. *Williams v. Asheville Contracting Co.*, 257 N.C. 769, 771 (1962). Law of the case arises in two different ways. The first is when an appellate court rules on a question and returns a case to

the lower courts. *See State v. Lewis*, 365 N.C. 488, 504–05 (2012). The ruling of that appellate court is "the law of the case" and therefore binding on the lower courts in that same proceeding. *Id.* The second form arises when a trial court rules on a legal matter in a final, appealable judgment, but no appeal is taken. *Williams*, 257 N.C. at 770–71. At that point, the trial court's ruling becomes "the law of the case" and binds the parties if the case is reopened, for example by remand from an appellate court reviewing unrelated issues. *Id.* at 771; *see also Summers*, 351 N.C. at 622. In other words, "when a party fails to appeal from a tribunal's decision that is not interlocutory, the decision below becomes 'the law of the case' and cannot be challenged in subsequent proceedings in the same case." *Boje v. D.W.I.T., L.L.C.*, 195 N.C. App. 118, 122 (2009).

Identifying which of these two preclusive doctrines applies in this case is meaningful. Collateral estoppel is an affirmative defense. *Old Republic Nat'l Title Ins. Co. v. Hartford Fire Ins. Co.*, 369 N.C. 500, 505 (2017). This means it must be asserted by the party seeking to invoke it. Courts cannot raise affirmative defenses on their own initiative. *Unifund CCR, LLC v. Francois*, 260 N.C. App. 443, 445 (2018). Here, the State did not raise collateral estoppel when Lingerfelt filed his successive 2023 petition and thus, if collateral estoppel is the appropriate doctrine, the issue is waived. *See Robinson v. Powell*, 348 N.C. 562, 566 (1998); *Moss v. N.C. Dep't of State Treasurer*, 282 N.C. App. 505, 517 (2022).

By contrast, law of the case is not an affirmative defense asserted by a litigant;

it is a question of law for the courts. *See Fish v. Stetina*, 297 N.C. App. 733, 738 (2025). The doctrine is designed to protect the finality of court rulings and judgments that occur within the same legal proceeding. *Id.*; *see also Wellons v. White*, 229 N.C. App. 164, 179 (2013).

Applying these principles here, we hold that successive petitions to terminate registration under N.C.G.S. § 14-208.12A are all part of the same underlying proceeding and are therefore subject to law of the case. *See Williams,* 257 N.C. at 771. We reach this holding for several reasons.

First, petitions to terminate registration fall within a category of filings that are traditionally viewed as successive proceedings within a single criminal case, such as post-conviction filings and petitions for removal of satellite-based monitoring. *See generally State v. Cheers*, 285 N.C. App. 394, 396–98 (2022). These filings are not independent legal actions; instead, they are requests for relief from the effect of earlier court judgments. *See id.* They are therefore considered part of the same underlying case and a legal ruling on one petition is binding in future petitions. *See State v. Tucker*, 385 N.C. 471, 491–92, 514 (2023). And although the General Assembly has since codified this procedural rule for some post-conviction proceedings, the preexisting common law rule that they are all part of the same underlying case was not supplanted and remains in effect. *See State v. White*, 274 N.C. 220, 232 (1968).

Second, the procedure to terminate registration confirms that successive

petitions are part of the same case. The statute requires the petition to be put on the criminal docket and to be calendared by the district attorney. N.C.G.S. § 14-208.12A(a). The General Assembly created this unusual process because, as noted above, these petitions are not independent legal actions. Every petition connects back to the underlying criminal judgment that compelled the initial registration. Indeed, the petitions in this case underscore that they are all filings in the same proceeding. Lingerfelt filed three petitions between 2017 and 2023. All of those petitions and corresponding court orders bear the same case number—the case number for Lingerfelt's underlying criminal case. *See Fish*, 297 N.C. App. at 740–41.

In sum, Lingerfelt's 2023 petition for removal from the sex offender registry was barred by law of the case. In 2019, the trial court entered a final, appealable order ruling that Lingerfelt was a Tier II offender not eligible for removal from the registry until 25 years after his initial 2003 registration. Lingerfelt did not appeal that order, rendering it the law of the case. *See Summers*, 351 N.C. at 622. As a result, that ruling cannot be challenged in a successive termination petition because that petition is part of "subsequent proceedings in the same case." *See Boje*, 195 N.C. App. at 122.

Finally, we acknowledge that the State did not assert a law of the case argument at the Court of Appeals. Because the State failed to do so, Lingerfelt insists that the argument is abandoned before this Court.

This is incorrect because the State is the appellee. Appellate review of a lower

court ruling is strictly limited to the arguments presented by the *appellant* (absent certain nonwaivable issues such as subject matter jurisdiction). It "is not the role of the appellate courts to create an appeal for an appellant." *In re R.A.F.*, 384 N.C. 505, 512 (2023) (cleaned up). This is because litigants are not compelled to appeal a court judgment even if they believe it is legally wrong. They can choose to accept some or all of an adverse judgment and allow the finality of that ruling to take effect. As a result, an appellate court will review only those issues the appellant presents to it, even if there appear to be other, unraised grounds that render the lower court judgment infirm. *In re E.H.*, 388 N.C. 100, 107–09 (2025).

But this principle does not apply to the arguments of the appellee. A reviewing court is not constrained to uphold a lower court ruling solely on the legal grounds presented by the appellee. Were it otherwise, it could compel an appellate court to reverse a judgment that is legally sound—in effect permitting litigants to stipulate to what the law is and, as a result, permitting them to force an appellate court to invalidate a proper trial court judgment. We do not allow this. *See Tucker*, 385 N.C. at 489–90. Instead, appellate courts must affirm lower court rulings if there is any legal ground to do so, even if the appellee did not raise that legal issue in its briefing. *See Shore v. Brown*, 324 N.C. 427, 428–29 (1989).

Of course, courts always benefit from the adversarial process, and so the better practice in this circumstance is to direct the parties to address the legal issue the appellee omitted through supplemental briefing, as we did here. *See State v.*

*Lingerfelt*, 388 N.C. 514 (2025) (order). Having reviewed those supplemental briefs, we reject Lingerfelt's argument that this is a matter of collateral estoppel for the reasons discussed above. We hold that Lingerfelt's petition was barred by law of the case. We therefore affirm the Court of Appeals decision on that basis, without addressing the court's remaining analysis.

## Conclusion

We modify and affirm the decision of the Court of Appeals.

MODIFIED AND AFFIRMED.

Justice RIGGS dissenting.

I disagree with the majority's holding that treats a ruling in one petition under N.C.G.S. § 14-208.12A as binding on future petitions, thereby requiring that the law of the case doctrine applied to procedurally bar Mr. Lingerfelt's 2023 petition. I do not read section 14-208.12A as the majority does, and in deference to the legislature, I would hold that even if the law of the case doctrine were the correct preclusion doctrine to apply, it does not control here. Importantly, both the State and Mr. Lingerfelt agree. Thus, the trial court was not bound by prior adjudications of Mr. Lingerfelt's petitions because each subsequent petition is a new action under the statutory framework, and this Court should have reached the merits of Mr. Lingerfelt's case.

## I.   Background

Section 14-208.12A of the North Carolina General Statutes allows a trial court to grant relief to a petitioner and thus terminate the sex offender registration requirements if:

> (1) The petitioner demonstrates to the court that he or she has not been arrested for any crime that would require registration under this Article since completing the sentence,
>
> (2) The requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a registration requirement or required to be met as a

condition for the receipt of federal funds by the State, and

(3) The court is otherwise satisfied that the petitioner is not
a current or potential threat to public safety.

N.C.G.S. § 14A-208.12A(a1) (2025). "If the court denies the petition, the person may again petition the court for relief in accordance with this section one year from the date of the denial of the original petition to terminate the registration requirement." N.C.G.S. § 14A-208.12A(a3).

On 9 June 2023, Mr. Lingerfelt timely appealed to the Court of Appeals from a 2023 trial court order denying his petition to terminate registration on the sex offender registry. In a divided opinion, the Court of Appeals affirmed the trial court's denial of Mr. Lingerfelt's petition. *See State v. Lingerfelt*, 297 N.C. App. 168 (2024). The Court of Appeals first outlined the Sex Offender Registration and Notification Act (SORNA). *See id.* at 171. Applying *State v. Moir*, 369 N.C. 370 (2016), the Court of Appeals then selected the "categorical modified approach" as the appropriate means for determining whether Mr. Lingerfelt was eligible to have his sex offender obligation reduced based on his tier level under SORNA. *See id.* at 173. In applying this approach, the majority compared the relevant state statute, N.C.G.S. § 14-27.7(a), with the relevant federal statute, 18 U.S.C. § 2243(a), to determine whether there was a categorical match between the state and federal offenses. *See Lingerfelt*, 297 N.C. App. at 171, 175–77. The majority, agreeing with the dissent, noted that the federal statute includes an intent element in outlining its offense and the state statute does not. *See id.* at 177. However, the majority reasoned there must be a

*categorical* match between the state and federal statutes because "there is no *realistic probability* that North Carolina could or would enforce its statute in a way that would sweep in *unintentional* sexual activity by a substitute parent." *See Lingerfelt*, 297 N.C. App. at 177–78. Ultimately, the court concluded that the trial court did not err in denying Mr. Lingerfelt's petition and affirmed the decision. *See id.* at 178.

Judge Murphy dissented, holding that the majority opinion incorrectly applied *Moir*, which, in his view, held that when the state statute is broader than the generic, federal offense, there is no categorical match. *See id.* at 178–79 (Murphy, J., dissenting). He would have held that because the state statute clearly excludes any additional *mens rea* element, Mr. Lingerfelt was not a Tier II offender under the applicable federal law. *See id.* at 179. Judge Murphy would have vacated the trial court's order denying Mr. Lingerfelt's petition for termination of sex offender registration and remanded to the trial court for a new determination. *Id.* at 182. Still, Judge Murphy acknowledged that the ultimate decision on whether to terminate Mr. Lingerfelt's registration would fall to the trial court. *Id.*; *see In re Hamilton*, 220 N.C. App. 350, 359 (2012).

This case came to this Court after Mr. Lingerfelt appealed as of right based on the dissent at the Court of Appeals. The issue presented to this Court was whether the Court of Appeals erred when it affirmed the trial court's determination and subsequent denial of Mr. Lingerfelt's 2023 petition because it determined that Mr. Lingerfelt fell under Tier II for the purpose of removal from the sex offender registry.

On 11 September 2025, this Court heard oral arguments in this appeal. During the argument, Justice Dietz inquired whether the 2019 decision by a lower court on Mr. Lingerfelt's tier status binds any subsequent petitions under the law of the case doctrine. *See* Oral Argument at 6:59, *State v. Lingerfelt*, No. 38A25 (N.C. Sep. 11, 2025), https://www.youtube.com/watch?v=Q5YSkT_Dx5c. This argument was never raised by Mr. Lingerfelt or the State throughout the years of proceedings. Nevertheless, the Court subsequently ordered supplemental briefing on this issue. *See id.* at 32:42; *State v. Lingerfelt*, No. 38A25 (N.C. Sep. 19, 2025) (order).

## II.    Discussion

As a preliminary note, the majority suggests that, at least with respect to subsection (a1)(2) and the tier assignment for crimes committed under federal or other states' laws, "calculating an offender's tier level under SORNA is a legal question with only one objectively correct answer." Accordingly, the majority concludes that the trial court's conclusion of Mr. Lingerfelt's tier level under SORNA is subject to issue preclusion. This is an oversimplification. The majority relies on *Moir*, where this Court held that trial courts should use the "modified categorial approach" in determining whether there is a match between a federal offense and a state offense for the purposes of tier determination under SORNA. *See Moir*, 369 N.C. at 375–90. I understand why, when focusing on the modified categorical approach, it seems like the question of tier should have only one "correct" answer. But even in *Moir*, the analysis is more nuanced. In footnote 9 in *Moir*, our Court

explicitly noted that notwithstanding the general direction to use the modified categorical approach, the Court held

> that North Carolina courts should use the non-categorical or 'circumstance-specific approach' in addressing any age-related issues that may arise in the course of determining whether an individual seeking the termination of an existing sex offender registration requirement should be categorized as a Tier I, a Tier II, or a Tier III offender.

*Id.* at 385 n.9. This is the more fact-dependent approach to matching crimes, which, by definition, does not present a purely legal question. The evidence presented at the time, and the trial court's analysis of the facts, dictate the conclusion. Moreover, as we have seen in recent cases, *State v. Mincey*, No. 68A24, slip op. at 4 (N.C. May 22, 2026), the status of laws in other states changes with some regularity and courts receive misinformation about the details of statutes in other states. This also complicates what the majority describes as a purely legal question with an objectively correct answer.

The majority reasons that the successive petitions are all part of the same case; therefore, the issue of tier level is precluded by an earlier court's determination, and the law of the case doctrine applies to that issue. To the contrary, both Mr. Lingerfelt and the State essentially argue that the law of the case doctrine is pre-empted by the fact that the General Assembly has expressly allowed defendants to file a new petition to terminate their registration from the sex offender registry one year from a denied petition. Furthermore, both point to an absence in the statute of any language that suggests that rulings in earlier petition proceedings bind subsequent

petition proceedings, regardless of under which prong an earlier petition is denied. I agree with the State and Mr. Lingerfelt's reading of the statute.

The plain language of the statute creating the process permitting successive petitions is consistent with a conclusion that each subsequent petition is a new legal action; therefore, sub-issues determined in a previously adjudicated petition are not binding on later petitions. As discussed above, section 14-208.12A(a)(a1) outlines three requirements a petitioner must satisfy when requesting removal from the sex offender registry: the petitioner has been on the registry for a period of at least ten years; they have not been arrested for any other registerable offenses; and their removal from the registry would not be in violation of any federal laws. The statute does not treat the three conditions for relief differently, suggesting that some are fact questions and some are legal questions or that some conditions can be re-examined yearly while others cannot. The statute, in prescribing that the court "may" grant relief if the three conditions are met, requires the court to assess all three conditions at each petition filing and each condition must be met for the petitioner to qualify for relief. N.C.G.S. § 14-208.12A(a1).

The majority suggests the one-year refiling provision advances the "statute's purpose" because "the ultimate decision to grant a petition to terminate registration turns on whether the trial court is 'satisfied that the petition is not a current or potential threat to public safety.'" *See* majority *supra* Part I. But as discussed above, that is not the only condition that the trial court must assess under subsection (a1),

nor is it identified as the most important condition to be assessed. The fact that petitioners can refile only a year after denial, even though the number of years between each tier level is significantly more than a year, suggests that if a tier finding were intended to be binding, a subsequent petition should be barred until eligibility under the tier identified is reached. *See* N.C.G.S. § 14-208.12A; 42 U.S.C. § 16915(a) (providing that a Tier I offender must remain registered for fifteen years; Tier II for twenty-five years; and Tier III for a lifetime); *Moir*, 369 N.C. at 375–76. The statute creates no such restriction on subsequent petitions.

Additionally, the cases upon which the majority relies to suggest that a new petition is not an independent legal action are all distinguishable or do not support the majority's legal conclusion here. The majority relies on *State v. Cheers*, where the Court of Appeals addressed the removal of satellite-based monitoring (SBM), for the assertion that petitions to terminate registration are "successive proceedings" that fall within a "single criminal case." *See* majority supra, Part III (citing *Cheers*, 285 N.C. App. 394, 396–98 (2022)). First, that section 14-208.40A (governing SBM) requires successive petitions to be put on the criminal docket under the same case number does not necessarily mean that all petitions under that statute are part of the same case implicating the law of the case doctrine. Rather, it is simply a procedure that allows easy referral to the underlying conviction.

More significantly, the procedural bars constraining post-conviction motions for appropriate relief (MARs) under section 15A-1419 show that the legislature

knows how to create procedural bars where it intends to prioritize finality over the regular revisiting of a collateral consequence. The MAR procedural bar statute creates an *explicit* procedural bar against MARs when a defendant was in the position to raise a ground for relief and did not do so or when the ground or issue underlying the motion was previously determined on the merits upon an appeal or upon a previous motion or proceeding. N.C.G.S. § 15A-1419 (2025). But that does not support a reliance here on *State v. Tucker*, 385 N.C. 471 (2023), to assert that a "legal ruling on one petition is binding in future petitions." *See* majority *supra* Part III (citing *Tucker*, 385 N.C. at 491–92, 514); N.C.G.S. § 15A-1419. MARs, like petitions to be removed from the registry, are also docketed on the criminal docket under the original case in which the trial that led to conviction occurred. N.C.G.S §§ 15A-1413, -1420 (2025). But unlike the MAR statutes, the General Assembly provided a procedure for petitioners to file petitions for relief from the registry annually, and it did not similarly establish explicit procedural bars to keep petitioners from refiling for said relief like with MARs.

The majority's interpretation of the statute makes distinctions between the elements that a petitioner must prove each time he petitions which is not found in any of the statute's plain text. As such, it is erroneous and usurps the legislature's authority to establish the contours for seeking relief from the registration requirements.

I would also hold the law of the case doctrine does not apply here. Under the

law of the case doctrine, this Court has explained that

> [a]s a general rule, when an appellate court passes on
> questions and remands the case for further proceedings to
> the trial court, the questions therein actually presented
> and necessarily involved in determining the case, and the
> decision on those questions become the law of the case, both
> in subsequent proceedings in the trial court and on a
> subsequent appeal, provided the same facts and the same
> questions, which were determined in the previous appeal,
> are involved in the second appeal.

*Tenn.–Carolina Transp., Inc. v. Strick Corp.*, 286 N.C. 235, 239 (1974) (quoting

*Collins v. Simms*, 257 N.C. 1, 11 (1962) (Parker, J., concurring in part and dissenting

in part)).

Even to the extent the statutory structure for repetitioning does not create a

very different kind of situation from ones in which law of the case applies, we should

not apply it here. First, this Court has long recognized that appellate courts cannot

assert arguments for the parties. *See, e.g., In re E.H.*, 388 N.C. 100, 101 (2025); *In re

A.M.O.*, 375 N.C. 717, 721 (2020) ("It is not the role of the appellate courts to create

an appeal for an appellant." (cleaned up)). Although this Court requested

supplemental briefing on the applicability of the law of the case to these facts, neither

Mr. Lingerfelt nor the State raised this argument at any point during the proceedings

nor in their supplemental briefings. Even though law of the case may not be an

affirmative defense, we still have a long history of not making parties' arguments for

them. Accepting the application of the doctrine would be in direct contravention of

established precedent by this Court. *See In re E.H.*, 388 N.C. at 101. In other words,

appellate review is strictly limited to the issues raised by the parties because those legal issues are considered "joined" after adversarial briefs. *See id.* (citing *State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Off.*, 293 N.C. 365, 368 (1977)). To allow appellate courts to pose new arguments for the parties would "risk misunderstanding the record or announcing a legal rule that is simply wrong." *Id.* Because neither party mounted the law of the case argument, it was not preserved for appeal or our consideration. *See Moss v. N.C. Dep't of State Treasurer*, 282 N.C. App. 505, 517 (2022).

In conclusion, I would defer to the statute as written by the legislature and hold that the law of the case doctrine does not apply because each petition is a new proceeding and the prior adjudication is non-binding. Even if the law of the case doctrine did apply, it is an assertion that the State waived on appeal and neither party raised in its supplemental briefings. Because the majority's holding clearly contravenes the statute, I respectfully dissent.

Justice EARLS joins in this dissenting opinion.